**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

January 31, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TERRY COUSINS, | No. 56996-5-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| STATE OF WASHINGTON and DEPARTMENT OF CORRECTIONS, | |
| Respondent. | |

MAXA, J. – Terry Cousins appeals the trial court's grant of summary judgment in favor of the Department of Corrections (DOC) in her lawsuit against DOC under the Public Records Act, chapter 42.56 RCW (PRA).

In 2016, Cousins made a request under the PRA to DOC relating to her sister's death while her sister was incarcerated. DOC provided records to Cousins on an installment basis. DOC's letter attaching the seventh installment in January 2019 stated that the request was closed. Cousins believed that records were missing from the installments she received, and she continued to correspond with DOC. In November 2019, DOC reiterated that the request was closed.

In July 2020, Cousins contacted DOC about records that she believed should have been produced. DOC subsequently reopened the request and produced additional installments of records totaling over 1,000 pages.

No. 56996-5-II

Cousins filed a PRA action in January 2021, contending that DOC's actions in responding to her request violated the PRA. The trial court granted DOC's summary judgment motion, ruling that Cousins' action was time barred by the PRA's one year statute of limitations.

In *Dotson v. Pierce County*, this court held that the PRA statute of limitations begins to run when an agency notifies the requester that the request is closed, even if the agency subsequently produces additional records. 13 Wn. App. 2d 455, 470-72, 464 P.3d 563, *review denied*, 196 Wn.2d 1018 (2020). Cousins argues that we either should distinguish *Dotson* on the ground that DOC here actually reopened her request or disregard the holding in *Dotson* regarding the start of the limitations period. The court in *Dotson* also held that the discovery rule is inapplicable to PRA actions, *id.* at 472, and Cousins argues that we should disregard that holding.

We follow *Dotson* and hold that DOC's January 2019 letter closing the request started the limitations period and that the subsequent production of additional records did not start a new limitations period. Therefore, we hold that the statute of limitations bars Cousins' PRA action because she did not file suit within a year after DOC closed the request. And we follow *Dotson* and hold that the discovery rule is inapplicable here. Accordingly, we affirm the trial court's grant of summary judgment in favor of DOC.

FACTS

*Background*

Renee Field was incarcerated in DOC custody beginning in February 2014. She died while in custody in March 2016. In July 2016, Cousins, Field's sister and personal representative of her estate, made a PRA request to DOC for all records regarding Field from

2

No. 56996-5-II

January 1, 2014 to the present. DOC acknowledged the request and stated that it would review and gather the records.

*Production of Records and Closing Letter*

DOC produced the first installment of records in November 2016 and produced a second installment in April 2017. In May 2017, Cousins' attorney wrote to Sheri Izatt, a public records specialist for DOC, noting several records that appeared to have been omitted in the first two installments. Izatt responded that the request was still open and that more records would be produced in future installments.

In July 2017, DOC produced a third installment of records that did not include the records that Cousins previously had referenced. DOC produced fourth, fifth, and sixth installments in December 2017, April 2018, and September 2018, respectively. None of the installments included the missing records that Cousins had referenced earlier.

On January 17, 2019, DOC produced the seventh installment. The letter enclosing the records stated that the request was "now closed." Clerk's Papers (CP) at 44.

*Further Communications and Production*

On January 22 and 23, 2019, Cousins exchanged emails with Izatt in which Cousins inquired about obtaining the records she had identified as missing after the second installment in May 2017. Izatt did not specifically respond to this inquiry. On February 1, Cousins emailed Izatt again about the missing records. Cousins did not receive a response from Izatt to this email. Cousins claimed that she called DOC over the next several months, but DOC did not return those calls. On October 14, she emailed Izatt and asked for a copy of her original request.

On October 29, Paula Terrell of DOC sent an email to Cousins responding to a voice mail message from Cousins. After a reply from Cousins, Terrell on November 4 responded with an

3

email to Cousins stating that Cousins' PRA request "is and remains closed." CP at 56. On November 14, Cousins emailed Terrell and indicated that not all requested records had been provided. On that same date, Terrell acknowledged the email and again explained that Cousins' PRA request "is and remains closed." CP at 69. Terrell further stated that "[s]ince this request is closed," Cousins was required to submit a PRA request if she wanted to request additional records from DOC.

Cousins responded on November 15 that her request was closed "due to your agencies [sic] assumption that my request was completely filled." CP at 65. Cousins stated that her request was not complete and reiterated that she had not received all of the records previously identified. Terrell did not respond to this email.

Even though Cousins still had not received specific records that she had identified as missing since May 2017 and she knew that DOC had closed its file, she did not file suit against DOC at that time.

On July 7, 2020, almost 18 months after DOC had closed her request, Cousins sent an email to Terrell stating that she had not heard back regarding her "unfinished pdr request" and again stating that she had not received all the requested documents. CP at 537. She stated, "I am again requesting that you send me the remaining documents for my public disclosure request from 2016." CP at 537. Terrell sent Cousins an email that listed the five requested categories of records previously identified as missing and stated, "Department staff are currently identifying and gathering records responsive to your request." CP at 536. In an internal record, Terrell stated, "Received email from requestor stating she did not receive all responsive records; therefore, I re-opened the request and will conduct an additional search." CP at 590.

4

Cousins followed up with a request of 29 additional categories of records that she had not received. Terrell acknowledged receipt of the request for additional records, and stated, "Department staff are currently identifying and gathering records responsive to your request." CP at 551. In an internal record, Terrell stated, "Requestor has indicated she did not receive all records to her request. Therefore, an additional search will be conducted and request re-opened." CP at 590. In her deposition, Terrell confirmed that her July 2020 email responding to Cousins' request for the missing records was a reopening of the original request.

DOC produced installments 8 through 16 from October 2020 through June 2021. In the June email containing installment 16, Terrell stated that this was the final installment and the request was closed. But DOC produced a 17th installment in August 2021. After Cousins' emails in July 2020, DOC produced 10 additional installments consisting of over 1,000 pages of records.

*Trial Court Proceedings*

Cousins filed suit against DOC in January 2021, before DOC finished producing all the additional records. She sought disclosure of the records she requested in 2016 and statutory penalties, attorney fees, and costs under the PRA. Cousins alleged in her complaint that none of the later installments contained the additional categories of records she identified as missing in July 2020.

After some discovery, DOC moved for summary judgment based on the PRA's one year statute of limitations because DOC had closed Cousins' request in January 2019.

Cousins opposed DOC's summary judgment motion, arguing that the statute of limitations period started again when DOC reopened her request in July 2020 or until the last record was produced in August 2021. In the alternative, Cousins argued that equitable tolling

5

No. 56996-5-II

should apply because DOC handled her request in bad faith. Cousins also stated in a footnote that the discovery rule would be a better remedy than equitable tolling in a silent withholding case.

The trial court granted DOC's summary judgment motion. The court ruled that under *Dotson*, the statute of limitations began to run in January 2019 when DOC stated that the request was closed. Cousins appeals the trial court's grant of summary judgment in favor of DOC.[1]

ANALYSIS

A.    STANDARD OF REVIEW

The PRA is designed to provide for the broad disclosure of public records. *Ekelmann v. City of Poulsbo*, 22 Wn. App. 2d 798, 805, 513 P.3d 840 (2022). RCW 42.56.030 requires that the PRA be liberally construed in favor of disclosure unless disclosure is specifically exempt. *Id.*at 806.

We review an agency's action in responding to a PRA request de novo. *Id.* at 805. Summary judgment orders involving the PRA also are reviewed de novo. *Id.* When the record consists of only documentary evidence on PRA matters, we stand in the same position as the trial court. *Id.*

With a summary judgment motion, we view the evidence and apply all reasonable inferences in the light most favorable to the nonmoving party. *Lavington v. Hillier*, 22 Wn. App. 2d 134, 143, 510 P.3d 373, *review denied*, 200 Wn.2d 1010 (2022). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). There is a genuine issue of material fact only if

---

[1] Cousins initially sought direct review in the Supreme Court. The Supreme Court transferred the case to this court.

No. 56996-5-II

reasonable minds could disagree on the conclusion of a factual issue. *Lavington*, 22 Wn. App.

2d at 143. Further, if there are undisputed facts that do not allow for reasonable differences in

opinion, then the question is one of law. *Harper v. State*, 192 Wn.2d 328, 346-47, 429 P.3d 1071

(2018).

B.    PRA STATUTE OF LIMITATIONS

RCW 42.56.550(6) states, "Actions under [the PRA] must be filed within one year of the

agency's claim of exemption or the last production of a record on a partial or installment basis."

In *Belenski v. Jefferson County*, the Supreme Court held that the PRA statute of

limitations "begins to run on an agency's definitive, final response to a PRA request." 186

Wn.2d 452, 457, 378 P.3d 176 (2016). The court based this holding on its interpretation of RCW

42.56.550(6). *Id.* at 460. The court stated, "This theme of finality should apply to begin the

statute of limitations for all possible responses under the PRA, not just the two expressly listed in

RCW 42.56.550(6)." *Id.* "[T]o conclude otherwise would lead to absurd results – leaving either

no statute of limitations or a different statute of limitations to apply based on how the agency

responded." *Id.* at 460-61.

In *Belenski*, the county responded to a PRA request by stating that it had no responsive

records. *Id.* at 455. Belenski ultimately discovered that the county did in fact have the requested

records, and he filed suit over two years after the county's response. *Id.* The court stated that the

county's response that it had no responsive records was a final, definitive response, "[r]egardless

of whether [the] answer was truthful or correct." *Id.* at 461. The response sufficiently put

Belenski on notice that the county neither intended to disclose any records nor further address

the request. *Id.* Belenski could have sued the county as soon as he received its response instead

7

No. 56996-5-II

of waiting two years before bringing suit. *Id.* The court concluded that the county's response was sufficient to trigger the statute of limitations. *Id.* at 459.

Belenski and amici raised concerns regarding the incentive for agencies to intentionally withhold information and avoid liability if the statute of limitations was allowed to run based on an agency's dishonest response. *Id.* at 461. The Supreme Court recognized that such an incentive could be contrary to the PRA's broad disclosure mandates and fundamentally unfair in some circumstances. *Id.* Therefore, the court remanded for the trial court to determine whether the doctrine of equitable tolling applied. *Id.* at 462.

In *Dotson*, Dotson submitted a PRA request to the county's Planning and Land Services (PALS) Department for all records regarding Dotson's property. 13 Wn. App. 2d at 459. After producing the requested records, PALS sent a letter to Dotson in June 2016, stating, "As you have received responsive documents, I am closing your request." *Id.* at 461. PALS subsequently discovered records responsive to Dotson's PRA request on three separate occasions and sent the records to Dotson upon each discovery. *Id.* at 462-64. The first such disclosure was in October 2016. *Id.* at 462. Dotson filed a PRA complaint against the county in October 2017. *Id.* at 463.

This court held that the PRA statute of limitations barred Dotson's action because he did not file within one year of the county closing the request. *Id.* at 472. The court disagreed with Dotson's argument that the statute of limitations started when the county released the last of the additional records. *Id.* at 470. The court emphasized that the Supreme Court in *Belenski* had "explicitly found" that the PRA statute of limitations " 'begins to run on an agency's definitive, final response to a PRA request.' " *Id.* at 471 (quoting *Belenski*, 186 Wn.2d at 457). The court stated that the June 2016 letter "comprised a final, definitive response to Dotson's request, and started the statute of limitations." *Dotson*, 13 Wn. App. 2d at 471. The court also noted that no

No. 56996-5-II

facts supported concerns of gamesmanship by the county, and that the letter's closing language only intended to alert Dotson that there would be no forthcoming records. *Id.*

In addition, the court in *Dotson* held that the discovery rule – under which the statute of limitations does not start until the plaintiff knew or should have known the essential elements of the cause of action – does not apply to PRA actions. *Id.* at 472.

## C. APPLICATION OF *DOTSON*

Cousins argues that we should either distinguish or disregard *Dotson* and hold that the statute of limitations did not start until DOC provided its last installment of records. We disagree, and we conclude that the PRA statute of limitations started in January 2019 when DOC informed Cousins that it was closing her request.

### 1. Distinguishing *Dotson*

Cousins argues that the facts of this case are distinguishable from *Dotson*. She claims that if closing a request starts the statute of limitations, a reopening of the request must restart the statute of limitations. We disagree.

Cousins is correct that the facts here are different than in *Dotson*. In *Dotson*, PALS did not reopen the PRA request and search for additional records. Instead, the additional records produced were discovered accidentally in the regular course of business and in response to Dotson's summary judgment motion. 13 Wn. App. 2d at 462-63. Here, DOC actually reopened the PRA request in July 2020 in response to a communication from Cousins, searched for additional records, and produced additional installments following the consecutive numbering of the previous installments. And after Cousins' emails in July 2020, DOC produced 10 additional installments consisting of over 1,000 pages.

9

No. 56996-5-II

However, the different facts do not change the result. As discussed above, the Supreme Court in *Belenski* adopted a bright line rule: the PRA statute of limitations "begins to run on an agency's definitive, final response to a PRA request." 186 Wn.2d at 457. This bright line rule requires a PRA requester to act promptly to file a PRA action, consistent with the one year statute of limitations. An agency's definitive, final response that the request is closed provides a requestor with sufficient notice that the agency no longer intends to disclose additional records or further address a request. *Belenski*, 186 Wn.2d at 461; *Dotson*, 13 Wn. App. 2d at 471. At that point, there is no reason to delay in filing suit. *Belenski*, 186 Wn.2d at 461; *Dotson*, 13 Wn. App. 2d at 471.

This court in *Dotson* applied the bright line rule established in *Belenski* even though the agency produced additional records after the request was closed. *Dotson*, 13 Wn. App. 2d at 470-72. The court expressly rejected the argument that the statute of limitations started on the date the agency released additional records. *Id.* at 470. Nothing in *Dotson* suggests that the result should be different if the agency "reopens" the request and actually searches for and produces additional records. Creating an exception in this situation would undermine *Belenski*'s bright line rule.

Here, it is undisputed that DOC in January 2019 gave a definitive, final response to Cousins that her PRA request was closed. Under *Belinski* and *Dotson*, this means that the statute of limitations started on that date. We conclude that the fact that DOC later reopened the request after the statute expired is immaterial.

No. 56996-5-II

    2.    Disregarding *Dotson*

Cousins argues that we should decline to follow *Dotson* and hold that closing a PRA request does not start the statute of limitations when the agency continues to produce records responsive to that request. We disagree.

First, Cousins argues that *Dotson* is inconsistent with RCW 42.56.550(6), which states that a PRA action must be filed within one year of "the agency's claim of exemption or the last production of a record." We acknowledge that the language of RCW 42.56.550(6) does suggest that the statute of limitations starts only when the agency produces the last record. But *Belenski* interpreted the statute as stating that the limitations period begins at an agency's final, definitive response. 186 Wn.2d at 460. And *Dotson* is not inconsistent with *Belenski* in holding that the closure of a PRA request is a final, definitive response.

Second, Cousins argues that the holding in *Dotson* that an agency's closing letter can be a final, definitive response even when the agency later produces responsive records is erroneous. She claims that this holding allows an agency to arbitrarily close a PRA request and then silently withhold records until the statute of limitations expires.

But we agree with *Dotson* that an unequivocal closing of a PRA claim is a final, conclusive response, which under *Belenski* starts the statute of limitations. And the court in *Belenski* stated that a final, definitive response started the statute of limitations even if the response was untruthful or incorrect. 186 Wn.2d at 461. The court acknowledged the potential problem that Cousins raises, but noted that a dishonest response may trigger application of equitable tolling. *Id.* at 461-62. That doctrine helps to alleviate Cousins' concerns about manipulative responses. And there is no indication in the record that DOC's response was an attempt at manipulation.

11

No. 56996-5-II

We recognize that when the requestor is not aware that the agency has failed to produce certain records, the application of the *Belenski* bright line rule may lead to a harsh result. But that is not the case here. Cousins knew as early as May 2017 – long before DOC closed the request – that some of the categories of records she had requested had not been produced. But she still had not received those records when DOC closed the request in January 2019. Cousins again stated that there were missing records in November 2019, but DOC twice reiterated that the request had been closed. Cousins could have and should have filed suit regarding what she believed to be DOC's deficient production before the statute of limitations expired in January 2020.

Further, it is important to recognize that a requestor can still obtain the requested records even if the statute of limitations precludes a PRA action on the original request. Nothing prevents a requestor from making a new records request for records that were not produced. Cousins chose not to make a second request, instead insisting that DOC respond to her original request.

We decline Cousins' invitation to disregard *Dotson*.

3. Discovery Rule

In the trial court, Cousins argued that equitable tolling should apply here. She does not make that argument on appeal. Instead, Cousins argues that we should apply the discovery rule. We disagree.

This court in *Dotson* held that the discovery rule did not apply to the PRA statute of limitations. 13 Wn, App. 2d at 472. The court stated,

> The discovery rule generally applies in cases where "the statute does not specify a time at which the cause of action accrues." However, the PRA statute of limitations contains triggering events that enable a requester to know that a cause of action has accrued, and the legislature enacted no discovery rule exception.

12

No. 56996-5-II

*Id.* (quoting *Douchette v. Bethel School Dist. No. 403*, 117 Wn.2d 805, 813, 818 P.2d 1362 (1991)). We agree with the holding in *Dotson*. Therefore, we reject this argument.

    4.    Summary

DOC's January 2019 email to Cousins stating that the PRA was closed was a final, definitive response that started the one year PRA statute of limitations. Cousins did not file her PRA action until January 2021, almost a year after the statute of limitations expired. Under *Belenski* and *Dotson*, the fact that DOC subsequently produced additional records did not restart the statute of limitations.

Accordingly, we hold that the statute of limitations bars Cousins' PRA action and that the trial court did not err in granting DOC's summary judgment motion.

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of DOC.

_____
MAXA, J.

I concur:

_____
CRUSER, J.

13

No. 56996-5-II

GLASGOW, C.J. (dissenting in part)—Unlike the majority, I would distinguish this case from *Dotson v. Pierce County,* 13 Wn. App. 2d 455, 464 P.3d 563, *review denied,* 196 Wn.2d 1018 (2020). I would hold instead that where Cousins consistently communicated to the Department that responsive records had not been provided, and where the Department had to reopen Cousins' request to search for, gather, review, and disclose an additional 1,000 pages of responsive records, the Department's initial closure of Cousins' request did not begin the statute of limitations period.

The majority's reasoning allows an agency to ignore a requester who is trying to follow up about missing records, wait one year from the agency's closing letter, and then demand that the court dismiss based on the statute of limitations. The agency could do so regardless of how many responsive records were initially improperly withheld, the agency's explanation, and the requester's diligence in pursuing the improperly withheld records. I do not believe this is what the legislature intended when it adopted the Public Records Act's one-year statute of limitations, nor do I believe this is what the Washington Supreme Court intended when it decided *Belenski v. Jefferson County,* 186 Wn.2d 452, 457, 378 P.3d 176 (2016).

I.    THE DEPARTMENT EFFECTIVELY WITHDREW ITS PRIOR CLOSURE WHEN IT
REOPENED COUSINS' REQUEST

As the majority explains, on January 17, 2019, the Department issued a letter closing its response to Cousins' public records request after disclosing its seventh installment. . Cousins corresponded with the Department at least seven times between the Department's closure letter and the reopening of the request. *See* Majority at 3-4. Cousins also called the Department several times during this time period. Cousins consistently and persistently maintained that the Department had not provided her with all of the records responsive to her request. *Id.* Cousins was specific in her descriptions of the records she believed existed but had not been disclosed.

14

No. 56996-5-II

Only after the one-year statute of limitations period expired did the Department begin the process of determining whether additional records responsive to her original request existed. A Department public records officer reopened Cousins' request to conduct additional searches, using the same tracking number. The Department then provided several additional installments, specifically installments eight through seventeen, consisting of over 1,000 pages, in response to Cousins' request.

## II. *DOTSON* IS DISTINGUISHABLE

This case is distinguishable from *Dotson*, and applying RCW 42.56.550(6) and *Belenski* to these facts, I would conclude that our case warrants a different result.

A plaintiff must file an action under the PRA "within one year of the … last production of a record on a partial or installment basis." RCW 42.56.550(6). As the majority correctly explains, "in *Belenski v. Jefferson County*, the Supreme Court held that the PRA statute of limitations 'begins to run on an agency's definitive, final response to a PRA request.'" Majority at 7 (quoting *Belenski*, 186 Wn.2d at 457)). Under *Belenski,* it is the "theme of finality" that matters. *Id* at 460. In that case, the court concluded that the agency's response stating there were no responsive records put the requester on notice that it did not intend to disclose any records or further address the request. *Id.* at 461.

This court applied *Belenski* in *Dotson*, 13 Wn. App. 2d at 469. The *Dotson* panel concluded that an unequivocal closing letter from the agency triggered the statute of limitations period, even though the agency later located and disclosed a few additional records. *Dotson,* 13 Wn. App. 2d at 471-72. Specifically, the agency later disclosed a lobby visit record, two pages of responsive phone logs, and a copy of a 2007 Habitat Assessment Report. *Id.* at 462-63. The agency disclosed the additional records as soon as it became aware that they existed and had not yet been disclosed. *Id.*

15

No. 56996-5-II

I wholeheartedly agree with the majority's assessment that the facts in this case are different from those in *Dotson*. Majority at 9. The few additional records disclosed after the agency closed the request in *Dotson* were discovered in the normal course of business. The requester did not persistently and repeatedly complain to the agency that records were missing from the agency's response. *Id.*; *Dotson,* 13 Wn. App. 2d at 462-63. Here, the Department reopened Cousins' request to conduct additional searches after Cousins repeatedly communicated to public records officers for months that records were missing from its response to no avail. After reopening the request and conducting additional searches, the Department disclosed ten additional installments amounting to over 1,000 pages. It then issued another closing letter again closing Cousins' request.

Unlike the majority, I would conclude that these drastically different facts warrant a different result. Under the plain language of the statute of limitations provision in the Public Records Act, the statute of limitations does not accrue until the "last . . . installment." RCW 42.56.550(6). The Department's first closing letter on which the majority relies occurred nine installments before the last installment. Moreover, the Department effectively withdrew its closure when it reopened the request and took several additional months to conduct additional searches and complete its response. Under these facts, the Department's first closing letter cannot be the kind of "definitive, final response" that the *Belenski* court had in mind. Considering the entire arc of the Department's response, the Department's first closing letter was not final and I would conclude that it did not begin the statute of limitations period.

### III. SEVERAL FACTORS SHOULD DETERMINE WHEN AN AGENCY'S RESPONSE BECAME FINAL

The majority's bright line rule has appeal, but it creates incentives that are contrary to the purpose of the Public Records Act. Strictly applying *Dotson*'s reasoning in all cases creates

16

No. 56996-5-II

incentives for agencies to delay full disclosure of responsive records when they discover a response was incomplete.

The Public Records Act's purpose is to promote broad disclosure of public records, and its penalty and attorney free provisions create a strong incentive for agencies to avoid improper withholding of records and delayed responses to public records requests. *See* RCW 42.56.030; RCW 42.56.550(4). We must consider the underlying policy of promoting free and open public examination of public records when applying the Public Records Act. RCW 42.56.550(3).

An agency that discovers it has improperly withheld records responsive to a closed request will benefit from doing exactly what the Department did here. Under the majority's bright line rule, the agency will benefit from ignoring a requester's inquiries about missing records until one year after the response was closed. I do not read *Belenski* to require this result. Instead, I would engage in an inquiry that considers factors that would encourage agencies to quickly disclose records they discover have been improperly withheld.

In determining the date when a public records response was truly final for purposes of applying the statute of limitations, I would consider multiple factors: (1) the extent of communications from the requester about the completeness of the agency response, (2) any other notice the agency may have had that its response was incomplete, (3) the extent of additional searches and disclosures that were necessary after the response was initially closed, (4) the nature of any agency communications with the requester about allegations of an incomplete response, and (5) whether the requester diligently pursued any missing records they were aware of.

Here, even though the Department reopened Cousins' request in this case rather than treating her ongoing inquiries as new requests, an agency's labelling should not be dispositive in every case and these factors do not rely on labelling. Under these factors, Cousins persistently and

17

No. 56996-5-II

repeatedly told the Department that its response was incomplete, and she diligently attempted to resolve the problem. The Department ultimately conducted extensive additional searches, disclosing 1,000 new pages over ten additional installments. The Department did not definitively and accurately explain to her at the time why it had not disclosed the records she believed were missing.[2] Even though Cousins could have brought a public records lawsuit within one year of the initial closing letter and did not, these factors weigh in favor of concluding the Department's response was not final at the time of its initial closing letter.

Multifactor considerations are more difficult to apply and they make results less predictable than a bright line rule; however, a more nuanced analysis would help ensure agencies prioritize prompt investigation of allegations that they have wrongfully withheld records. And agencies would have more incentive to promptly disclose wrongfully withheld records as soon as they are discovered. This is far more consistent with the underlying purpose of the Public Records Act.

For the reasons stated above, I respectfully dissent.

Glasgow, C.J.
_____
Glasgow, C.J.

---

[2] This does not necessarily mean that Cousins should prevail on the merits. That is a different question from whether the statute of limitations bars her claim.